# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 282 | **DATE** | 6/29/2000 |
| **CASE TITLE** | ROXFORD vs. AMERITECH CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Defendant's motion to dismiss is granted/denied in part. Plaintiff's fraud claim is dismissed without prejudice.**
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 06 2000 | |
| | Notified counsel by telephone. | | date docketed | 39 |
| ✓ | Docketing to mail notices. | | S.B. | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THEODORE ROXFORD, d/b/a VAKIL,

Plaintiff,

v.

AMERITECH CORP.,

Defendant.

No. 00 C 282
Judge James B. Zagel

(Related case: 99 C 4731)

## MEMORANDUM OPINION AND ORDER

Plaintiff Theodore Roxford operates a merger and acquisition business under the fictitious name Vakil. At the center of his dispute with Ameritech Corporation, an Illinois telecommunications company, is an agreement signed on September 12, 1996, by Roxford and Dan Foreman, an Ameritech vice-president, on the company's behalf. Briefly, the written agreement, which is entitled "Final Confidentiality Agreement" ("FCA"), addresses Roxford's provision of certain confidential information to Ameritech, in exchange for compensation should the information lead to a business venture between Ameritech and one of two Canadian telecommunication companies, and for confidentiality in the event that Ameritech decides not to pursue a deal. Roxford has sued Ameritech for breach of contract and common-law fraud and seeks damages in the form of a finder's fee in the amount of $2.5 million, as well as other damages. Ameritech now moves to dismiss the complaint in its entirety.

The FCA is attached and integral to the complaint, and I consider it on this motion to dismiss as part of the pleadings. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). Roxford drafted the document, which is typed on Vakil letterhead. It is addressed to "Dan

39

Foreman, VP, Investments and Acquisitions, Ameritech Corporation," and its text reads in its entirety:

> *This Agreement replaces all and any other Agreements between Vakil and Ameritech.*
>
> *Vakil has confidential information from BCE Inc and Northern Telecom regarding a possible sale, joint venture, partial ownership, investment, or other business combination. Vakil will immediately disclose this information to Ameritech, if Ameritech agrees:*
>
> *1. Not to speak with, meet, or discuss, with BCE Inc or Northern Telecom, any aspect of a possible sale, joint venture, partial ownership, or other business combination, until Ameritech has met with Vakil and read the confidential information and details about this Project. If after Vakil has disclosed this Project to Ameritech and Ameritech states that it has no interest in proceeding, Ameritech agrees to keep this Project confidential and not to discuss this with BCE Inc or Northern Telecom or enter into any agreement with BCE Inc or Northern Telecom, without meeting with Vakil first.*
>
> *2. That once Vakil has disclosed this Project to Ameritech, should Ameritech wish to meet with Vakil to examine the confidential information and meet with BCE Inc or Northern Telecom to discuss this Project in detail, Ameritech agrees to enter into a Compensation Agreement with Vakil regarding this transaction. The fee structure for Vakil will not exceed very basic travel expenses, and a 1/10th of 1% (.10%) finder's fee of the transaction price, payable upon the consummation of a deal.*
>
> *Added clause: However, under no circumstance would Ameritech pay Vakil a finder's fee exceeding $2.5 million in the aggregate, regardless of the transaction price that may be agreed upon by Ameritech and BCE Inc or Northern Telecom.*
>
> *Should Ameritech already be in discussion with BCE Inc or Northern Telecom about this specific Project, this Agreement would be null and void.*
>
> *Agreed Upon by Ameritech Corporation:    Agreed Upon by Vakil:*
> *s/ Dan Foreman    s/ Theodore Roxford*

According to the complaint, upon receipt of the signed FCA on or about September 12, 1996, Roxford faxed the confidential information to Foreman and sent all originals of the faxed documents via air courier. Upon receiving the faxed information, Foreman scheduled a meeting with Roxford in Chicago, IL, for September 25, 1996, but then canceled it a few days later,

stating that Ameritech was no longer interested in any business deal with BCE or Northern Telecom. That is the last Roxford heard from Ameritech. In 1998, he learned that Ameritech had agreed to invest $3.4 billion in BCE, in exchange for 20 percent of Bell Canada, which was wholly owned by BCE at the time. Roxford claims that the terms of the deal are the same ones he proposed in 1996, based upon the information he had from BCE.

Ameritech moves to dismiss the breach of contract claim, arguing first, that the FCA is at best an unenforceable "agreement to agree" with respect to how Vakil might be compensated in the future and therefore does not constitute a valid contract. In support, it points to the portion of the Agreement that reads on its face: "[S]hould Ameritech wish to meet with Vakil to examine the confidential information and meet with BCE Inc. or Northern Telecom to discuss this Project in detail, Ameritech *agrees to enter into a Compensation Agreement* with Vakil regarding this transaction." (Emphasis added.) It argues that the FCA cannot create a binding obligation between Ameritech and Vakil for a finder's fee because the parties intended, as evidenced by the explicit wording in the FCA, that Roxford's compensation would be the subject of a future agreement. (Roxford does not claim that any subsequent compensation agreement was ever reached.)

Under California law,[1] whether a writing constitutes a final agreement or merely an agreement to make an agreement depends primarily upon the objective intention of the parties, and in the absence of ambiguity, this must be determined by a construction of the instrument taken as a whole. *See Harris v. Rudin, Richman & Appel,* 87 Cal. Rptr. 2d 822, 828 (Cal. Ct. App. 1999); *Beck v. American Health Group International, Inc.,* 260 Cal. Rptr. 237 (Cal. Ct. App. 1989). Construing the entire agreement on its face, I find that it unambiguously reflects the parties' intent to be bound by its terms. It is clearly titled "Final Confidentiality Agreement" and in the first and last lines, the parties again refer to the document as an Agreement, stating unequivocally in the first line that it "replaces all and any other Agreements between Vakil and Ameritech." Such language is objective evidence of the parties' intent that the written agreement bind them. In fact, all uncertainty in the document is limited solely to one issue, Roxford's possible compensation, the need for agreement on which would arise only in the event that having reviewed the relevant information Ameritech would want to go ahead on the deal. By contrast, the written document in the primary case relied on by Ameritech includes objective evidence that the parties did not intend to be bound until the execution of a future writing. *See Beck,* 260 Cal. Rptr. at 240, fn 1 (hospital sent job applicant letter "to draft the outline of our future agreement"

---

[1] Federal courts apply the choice-of-law rules of the forum state in which the court sits, and where, as here, the case is transferred from one district to another, the rules of the state in which the transferor court sits are applied. *See International Marketing, Ltd. v. Archer-Daniels-Midland Company, Inc.,* 192 F.3d 724, 729 (7th Cir. 1999); *Waggoner v. Snow,* 991 F.2d 1501, 1506 (9th Cir. 1993). As this case was first filed in the U.S. District Court in the Northern District of California, I apply California's choice-of-law rules.

Under those rules, in the absence of a contractual choice-of-law provision, I apply the state's "governmental interest" analysis, which instructs that I should apply California law unless the foreign law — here, Illinois — conflicts with California law. *See Application Group, Inc. v. Hunter Group,* 72 Cal. Rptr. 2d 73, 82 (Cal. Ct. App. 1998). As neither party identified any true conflict in the contract law of California and Illinois that is relevant to this case, and my own brief review of the law also revealed none, I apply California law to the contract dispute.

and explained that letter, when signed, would be forwarded to corporate counsel so that a contract could be drawn up.)

Rather than being a pure agreement to agree, on its face this is a contract in which the parties left to future determination one term, to wit, the amount of compensation Roxford would receive should Ameritech consummate a deal with BCE or Northern Telecom.[2] If an essential element of a promise is reserved for future agreement by both parties, there is no legal obligation until such future agreement is made. *See Hotel del Coronado Corp. v. Foodservice Equip. Distrib. Assoc.*, 783 F.2d 1323, 1325 (9th Cir. 1986) (applying CA law); *Coleman Engineering Co. v. North American Aviation, Inc.*, 55 Cal. Rptr. 1, 7 (1966); *City of Los Angeles v. Superior Ct. of Cty. of Los Angeles*, 333 P.2d 745, 750 (1959). The enforceability of a contract containing a promise to agree depends upon the relative importance and the severability of the matter left to the future; it is a question of degree and may be settled by determining whether the indefinite promise is so essential to the bargain that inability to enforce that promise strictly according to its terms would make unfair the enforcement of the remainder of the agreement. *See City of Los Angeles*, 333 P.2d at 750. If the term awaiting future agreement is not essential, each party will be forced to accept a reasonable determination of the unsettled point or if possible the unsettled point may be left unperformed and the remainder of the contract will be enforced. *See Hotel del Coronado*, 783 F.2d at 1325.

Is the exact amount of Roxford's compensation in the event Ameritech makes use of the information and consummates a deal with BCE or Northern Telecom essential to this contract? I

---

[2] It is clear on the face of the FCA that the parties did not set the terms of the compensation. The FCA states that "Ameritech agrees to enter into a Compensation Agreement with Vakil" and that the fee structure "will not exceed" a certain amount. Those monetary numbers that are specified are included only as caps on Roxford's possible compensation.

don't believe it is. The compensation would be provided only if a particular series of events occurred: if Ameritech agreed to negotiate a deal with either BCE or Northern Telecom and those negotiations led to a deal. By contrast, the centrality of confidentiality to the agreement is reinforced by its placement in the title of the document. Most importantly, all of what Roxford had to offer Ameritech — i.e., the lion's share, if not all, of his performance — would be on the table at the time that the compensation was negotiated, and as a result, the exact amount cannot be considered essential to the bargain itself. It is certainly possible that Roxford will get substantially less than the $2.5 million he seeks, but it is not unreasonable that that is what he had to agree to get Ameritech to agree to compensate him at all. It is perfectly understandable that Ameritech did not want to commit to a compensation package before seeing the information in Roxford's possession, for all it knew the information was pure rubbish. While it might not be easy to set Roxford's compensation down the line, should he be entitled to any, it is possible and reasonable for a court to do so, and the fact that the parties left this term open does not destroy the entire contract.

Next, Ameritech argues that the FCA is unenforceable for lack of certainty, as it is "hopelessly confused and vague." It points to internal inconsistencies in the document, including that Vakil promised to immediately disclose confidential information in its possession to Ameritech, if Ameritech agreed to two conditions, one of which involved meeting with Vakil to read the information, and one of which involved entering into the compensation agreement, "should Ameritech wish to meet with Vakil to examine the confidential information and meet with BCE Inc. or Northern Telecom to discuss this Project in detail." As a result, says Ameritech, it is impossible to determine what Vakil was obligated to disclose to Ameritech, and what Ameritech was obligated to "read" or examine" with Vakil at some later meeting. Ameritech also argues that

the use of the capitalized term "Project," which is not defined, renders the document unintelligible, and that the prohibition on Ameritech entering into any transaction with BCE is not limited in scope or in time and is therefore too indefinite to be enforced.[3] An agreement will be enforced if it is sufficiently definite for a court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached. *See Ersa Grae Corp. v. Fluor Corp.*, 2 Cal. Rptr.2d 288 (Cal. Ct. App. 1991). The modern trend in California contract law favors carrying out the parties' intentions through the enforcement of contracts and disfavors holding contracts unenforceable due to uncertainty. *See Okun v. Morton*, 250 Cal. Rptr. 220 (Cal. Ct. App. 1988). I cannot say at this time that this contract is so ambiguous as to render it impossible to enforce (although when additional evidence is presented and considered that could still prove to be the case). While there is certainly some ambiguity about when and where the confidential information would be disclosed, read and/or examined by Ameritech, it is plain that Roxford's obligation under the FCA simply was to provide the confidential information in his possession about BCE and Northern Telecom to Ameritech. Likewise, while it is preferable that parties define all terms used, the word "Project" plainly refers to the confidential information "Vakil has . . . from BCE Inc and Northern Telecom regarding a possible sale, joint venture, partial ownership, investment, or other business combination" and Ameritech's possible use of it in pursuing a business deal with one of the companies. That is the only such project mentioned in the document.

The breach of contract claim stands.

---

[3] This last argument is made without citation to any legal authority. I do not consider it properly made and do not consider it at this time.

Ameritech next moves to dismiss Roxford's common-law fraud claim under Fed. R. Civ. P. 9(b) and 12(b)(6). The complaint's allegations related to fraud are that "in August of 1996, Ameritech representatives, upon being contacted by plaintiff, informed him by telephone that they were very interested in and excited about investing in BCE Inc. or Northern Telecom," that Ameritech subsequently signed the FCA making the promises contained therein, and that "at the time that Ameritech made these promises to plaintiff and signed the agreement, Ameritech had no intention of performing these promises." The complaint is devoid of any factual details as to who at Ameritech made the representations to him, when and where such statements were made, or the specific content of the statements, and that is information essential to Ameritech's attempt to defend itself from these allegations. Absent such details, the fraud claim is not stated with sufficient particularity to meet the requirements of the federal rules, and I dismiss it.

Finally, I want to make clear that factual allegations relevant to conversations Roxford had with Ameritech employees are included in an affidavit he attached to his opposition brief. I have not considered this affidavit in issuing this ruling. While a plaintiff may sometimes provide additional facts by affidavit in responding to a motion to dismiss if they are consistent with those allegations already pled, *see Hrubec v. National Railroad Passenger Corp.*, 981 F.2d 962, 964 (7th Cir. 1992), the affidavit submitted in this case goes far beyond the addition of the usual one or two missed facts. In the nine-page affidavit he filed, Roxford added substantial allegations relating to conversations and statements that were made during the period of time leading up to the signing of the agreement, far more than he included in his complaint. Given the substantial nature of these additions, I believe Ameritech would be prejudiced by their consideration, the substance of which it did not address in its reply brief. Moreover, in light of the policy

considerations underlying the heightened pleading standard for fraud claims, the danger of this prejudice is particularly high.

Accordingly, I dismiss Roxford's fraud claim without prejudice, but allow his claim for breach of contract to proceed.

ENTER:

James B. Zagel
United States District Judge

DATE: 6/29/00